May it please the court, Charles Katooby, Jr. of General Vea represent Petitioner Subah in this matter. I'd like to reserve two minutes of my time. First question I have in this case is that the I.J. ruled that Mr. Subah was inadmissible on the grounds that this was a crime involving moral turpitude. That's right, that's right. But he nonetheless granted him an 1159 waiver, if you will. That's correct. The government appeals the 1159 waiver. That's correct. Why didn't Mr. Subah appeal finding that the violation here was a crime involving moral turpitude? You're correct, Judge Amber, the Petitioner here did not appeal that finding from, we have to keep in mind though, he received everything he could have received from the 1159. He received a waiver of this crime and thus an adjustment of status. And we also have to keep in mind that he was proceeding pro se at this point. Limiting our review here and strictly construing the exhaustion requirement here simply wouldn't serve the purpose and the policy behind the exhaustion doctrine. And that purpose and policy is to ensure a full record for judicial review and make sure the agency has lent us experience and expertise to that record. The IJ and the DHS did that to this moral turpitude inquiry. And asking the BIA to lend another decision here, especially in this court, would review that determination. The moral turpitude inquiry did no vote as a matter of law in any respect. It simply wouldn't serve that purpose. Would he have run a risk in appealing that particular issue? I don't think so. I don't think he would have run a risk. He received everything, he received the adjustment of status. No, but I mean, would he have run a risk of losing what he received? He could have run that risk, but then we would just be here debating the same issue on the merits without the jurisdictional problem that the government has raised here. There's a lot of dicta in this court's case law that petitioners, immigration petitioners can preserve their appeal by raising the issue to the IJ or the BIA. If that warning is to be given any meaning, this is the prototypical case to give it meaning. Because as I think you said, he had won and he had won totally. That's right. That's right. 1159 governs both adjustment and waivers. He petitioned for an adjustment and in the alternative, a waiver. He got the waiver. He got everything that he could receive from the IJ. And requiring a pro se petitioner to cross appeal an embedded legal issue, it simply doesn't serve the purpose of the exhaustion doctrine. It's not as a matter of law. That was a matter of fairness. I'm not sure that we can have two different rules for a counsel and a pro se petitioner, but the point that you want to make is that he got everything he wanted and there was just no reason for him to take an appeal. That's right. And he might have run a risk of losing what he got. Let me ask, if I may, about your interpretation of In re Gene. Part of the argument that you made in the briefing appears to be that Mr. Subba had pled guilty to corruption of a minor and it was not right for the BIA to look past that statutory, that statute to which he had pled. Doesn't In re Gene, though, involve looking at the specifics of the offense going ahead and not just dealing with things in a categorical manner, but examining what it is that the defendant petitioner actually did and weighing that against the hardship to the petitioner and all that? That's right. You're absolutely correct, Mr. Jordan. In re Gene is a fact-based as opposed to categorical inquiry. In re Gene is a very new rule. It's only been interpreted several times by the courts of appeals, only once by this court. It is a fact-based inquiry. Our position was that the In re Gene categorization of a criminal alien into violent or nonviolent and basing the evidentiary burden on that categorization is very akin to a mixed question of fact and law. That is a non-discretionary aspect to a discretionary decision. And that mixed question of fact and law should in the least be supported by substantial evidence in the record. Similar to a past persecution finding in an asylum context. Now, I would also urge this court that this is merely an alternative argument to our other claim that the BIA transcended statutory authority in finding facts that made a de novo fact finding and based its decision on that de novo fact finding. Let's follow up on that. You say they did some finding of fact. Did the IJ, I mean, you've quoted a portion of the transcript where the IJ talks about the petitioner having a sexual relationship with an underage woman. Is there any place in the record where the IJ mentions the assertion that she's a 14-year-old and talks about that? No, I don't believe there's anything in the IJ's decision that says that. The pertinent part of the record where he talks especially about the in-range gene categorization is on page 16 of the record. He states quite clearly that, being sure I have it here, he states quite clearly that the petitioner had a relationship with a young woman. Well, at one point at least. He says the word underage earlier in his oral decision. That's the only statement he said underage. It's hard to gauge what he means by underage. It could very well mean under a young woman and then says in nearly the same breath, there was apparently no proof of the young woman's age. And so petitioner here pled guilty to having relations with someone under the age of 18. And that is well-grounded in the record. And then what the BIA did, it found those facts to be not clearly erroneous. And then in nearly the same breath, reached the factual conclusion as it started that he had relations with a 14-year-old girl. That there was statutory rape committed, which there probably meant that she was under 16. That's what the BIA said. Now, those two can't be squared. We have the IJ saying that she was under the age of 18. The BIA saying she was 14 years old. They're simply clearly at odds, especially since the age of consent in Pennsylvania is 16 years old. And it was that lack of consent that the BIA said there was an implicit risk of violence and thus a violent crime has been committed here. So we simply can't square the facts found by the IJ with the facts found by the BIA. And the only conclusion is that the BIA engaged in improper de novo fact-finding, similar to what this court struck down recently in Fort Towe versus Gonzales several months ago. In that case, the petitioner had committed, I think it was endangering the welfare of a minor in New York law. IJ found that the incident didn't incorporate sexual intercourse. The BIA ignored that finding, found that it did in order to deportable. This court struck down that decision as an improper de novo fact-finding under the statute and remanded the case to the BIA. And it's that panel's decision, although non-presidential, excuse me, should control here, should at least guide this court's discretion. It doesn't control it. It might not. That's right. It's a similar circumstance. It should guide this court in deciding this issue, the BIA's fact-finding. So you think that the outcome is the right, that outcome's the right outcome here, that it ought to be remanded to the BIA? Well, it depends on whether we reach the moral turpitude inquiry. What do you think is the right outcome here? I think the right outcome is to decide that this, that the petitioner has clearly not committed a crime of moral turpitude, that corruption of minors under Pennsylvania law is simply not a crime of moral turpitude. And you reach that by taking a formal categorical approach to the statute of conviction. And what do we do as a matter of chain then? Well, that goes to the waiver inquiry. That's completely separate from the moral turpitude inquiry. The two simply don't intermix. And looking at whether this crime was turpitudinous, we conduct a formal categorical approach, look at the statute of conviction and the fact of conviction. That's corruption of minors under Pennsylvania law. Does the statute really help you here? I mean, what helps you is the Walt case, doesn't it? Well, the Walt case sets up a state of mind, the minimum state of mind in the corruption of minors statute. And coupled that with the language of the statute, I think it's very clear that the least culpable state of mind for corruption of minors is recklessness. It's mere recklessness. You get that by reading the Walt. It says that there has to be for corruption of minors a knowing and intentional act which tends to corrupt the morals of the minor. It doesn't say an act which intends to corrupt the morals of the minor, but an act which knowingly corrupts the morals of the minor. And we have to take the Pennsylvania legislature's word on this. If they wanted to say knowingly or intentionally, they would have done so. They did so in three other places, but didn't say that. There's an argument that when you take a look at 6301, where it says under D, the state of state, it almost looks like that's strict liability. Right. Whenever in this section the criminality of conduct depends on the corruption of a minor whose actual age is under 16, it is no defense that he did not know the age. Absolutely. It can be looked at as a strict liability statute in which case this clearly cannot be a crime involving moral turpitude. And if the court reaches that finding... Because you don't know if she's under 16. That's right. We simply don't know. We know that in the record, we know that the minimum conduct under corruption of minors is in relation to someone under the age of 18. Well, it's a broad array of acts towards someone under the age of 18. If we look at the least culpable conduct test, which is what this court always does in formal categorical inquiry, corruption of minors can encompass a consensual high school relationship between an 18-year-old and a 17-year-old. Now, while perhaps maybe unwise and against the morals of many, it's simply not a vile, base, or depraved act that is necessary for moral turpitude. Is 6301 divisible under the law? It is stating the disjunctive, but I would say it not in a meaningful way. It's clearly on paradenture here that the petitioner was convicted under the first phrasing of 6301A, which is acts which intend to corrupt the morals of the minor. The other disjunctive sections are aiding and abetting a parole violation or something or other. I don't think there's any dispute here that he was convicted under the first phrase of 6301A. And if this is a conviction, it would do so only to establish that fact, which disjunctive section he was convicted under. And reviewing the plea call, we hear it's very clear that it is the first section, acts which intend to corrupt the morals of a minor. And the least culpable conduct of acts, which what? Intent. To corrupt the morals. Not intent, but intent. Not intent. I think it's important here that it doesn't say intent. It says acts which tend to corrupt the morals of the minor. And that encompasses a broad array of conduct. I.J. even noted under a categorical approach here, he was mistakenly doing it in the waiver context. He noted that this statute is so broad that it encompasses taking a 17-year-old to an R-rated movie without its parent's permission. That's how broad the statute is. And if we look at the least culpable conduct, it simply can't fall into the category, can't fall within this court's definition of moral turpitude. Moral turpitude has been defined by this court as vile, base, and depraved conduct, which is not just against the morals of society, but which is so, gives rise to moral outrage and shocks the conscious. It's also an act that has to be accompanied by a vicious motive or corrupt mind, which is generally intention. It's generally knowingly. Only once has this court even held a recklessness crime to encompass moral turpitude, and that was in the Knappett case, and that was assault with, a reckless assault with a deadly weapon. Let me, let me come back to the, if we have to deal with the matter of gene and the violent and dangerous crime issue. Give me your argument again as to why this is a legal determination and not a discretionary determination. This is, we would, we look at the in-rate gene standard as the AG's decision in in-rate gene as a threshold determination that categorizes criminal aliens in the one of two camps. Those committed violent crimes and those who committed non-violent crimes. And it is that threshold determination which sets up the standard, the evidentiary burden that an alien must carry in making a waiver, in making his waiver argument. Now, 1159C pins waiver on family unity, humanitarian purpose, and public interest. And in-rate gene, if you fall into the non-violent category, that's the standard. If you fall into the violent category, you have to make an incredibly high hardship showing to satisfy a waiver. And we would say that this categorization, traditionally within immigration statutes, categorizations of aliens in the one or two camps are a mixed question of fact and law. Even if it's precedent to, even if it's threshold to, a discretionary decision. It's not, in-rate gene categorization is not a discretionary decision because it doesn't actually determine the grant or denial of the waiver. It's a non-discretionary aspect to the discretionary act. And we would say that, yes, this court has to give deference to the BIA in its determination. But that deference is merely substantial evidence. When the BIA categorizes a criminal alien into one or two camps, it simply can't do so without substantial evidence in the record. I think Chavarria is the decision by Judge Nygaard on this, within this circuit, that the BIA has to ground its decision in substantial evidence. And what the BIA did here, which was pretty gross if you read this, it aired pretty clearly, it held that the petitioner had essentially committed a crime with which he was charged, but which he did not plead. And that offends the integrity of the state plea bargaining process and the predictability of immigration consequences resulting from those pleas. And it's on that grounds that I think that this Cheney standard should be reviewable here for a basis in substantial evidence. Now, no court has ruled this way. Every gene is pretty new. The Ninth Circuit has come closest to the rebus Gomez where it said that the BIA can't assume from the beginning that gene applies. But I would stress that this is merely an alternative argument to our improper fact-finding claim. And it really encompasses the same essential assertions. So if we agree with you on improper fact-finding, we don't have to decide that? That's right. That's right. And I think that's the easiest way to do that here. The gene standard is an interesting question. I think it's a question that the courts are going to have to deal with. And finally, the motion to reopen, you don't see as a remedy as a right? I don't think so. All right. Any other questions? Good. Thank you very much, Mr. Katoubi. We'll hear from Mr. Stone. Good morning. That's good. Raise that up a little bit. I think you're still going to need to raise it up. You can bend it. That's it. It won't break. Thank you, Your Honor. May it please the Court, my name is Paul Stone. I represent the respondent in this case. The Court asked the parties to discuss whether Supa was convicted of a crime of moral turpitude in light of Commonwealth v. DeWalt. So I'll start there. In the prior discussion, the Court noted that a crime that qualifies as a crime of moral turpitude often has to have an intent element, which has been defined as accompanied by a The Court held that for a conviction to stand under corrupting the morals of a minor, the accused had to take a knowing and intentional act, which tended to corrupt a minor. That does satisfy the requirements of a crime of moral turpitude because it's the knowing and intentional act itself that is turpitudinous. The fact that it does or does not, in fact, corrupt the morals of the minor is not as important for the crime of moral turpitude. But here you had a tough case for a prosecutor initially. I mean, there was an allegation made, the prosecutor made the determination that the victim was not credible, wasn't even sure what happened. And so the sort of way out of dodge was that you pleaded to this The mens rea is seemingly intent, or at the very least recklessness. Where do we show the intent here for the recklessness? Well, in the actual crime itself, his intent was to have intercourse with the underage victim. So you're saying that it doesn't matter whether the defendant intended to corrupt anybody, it just has to have been a knowing or intentional act. That's the position you're taking? Because I might be mistaken, but that's what I hear you saying, that there doesn't have to be any mens rea associated with, I want to corrupt this individual. There only has to be an intentional act to do the thing that the person did. Well, I think that is part of the mens rea. Where the disjunction is, is that intending to corrupt a minor means it doesn't necessarily have to in fact corrupt the morals of the minor. Sure, but doesn't it have to be, maybe I'm misunderstanding the law, but the distinction I understood your opponent to be making, and helped me understand if he's wrong as a matter of law, is that to be turpitudinous, a criminal act, it's not enough that the person have acted to do what the person did, and knowingly do what they did, that person has to intend for the act to corrupt the victim. Whether it in fact corrupts them or not is irrelevant, but the perpetrator has to have in his or her mind the object of corrupting that minor. So, I hear you saying, no that's not the standard. The standard is just, you don't go past the knowing act. You just stop there and say, the person intended to do what they did, and that's enough, without anything further, to call the act as a matter of law, turpitudinous. Have I understood your argument? Well, I think it is enough, but I do think the Pennsylvania statute does require the conviction that the act can be intended to corrupt the morals of the minor. It just doesn't have to. You've left me puzzled. I'm agreeing with that, your honor. I'm saying that the one step shorter may still be sufficient for it to be a crime of moral turpitude, merely intending to do the act itself. How can that be? I don't want to beat this, but as a logical matter, you've left me puzzled. I hear you saying in one breath, you do have to intend to corrupt the morals of a minor, and then I hear you saying in the next breath, you don't have to have that additional measure. I guess it's not relevant here, because I shouldn't even be making that argument. It's not relevant here, because under the Pennsylvania statute, you do have to have the requirements for it to be a crime of moral turpitude. Okay. If that's the case, how do you get to a crime of moral turpitude under the facts that the I.J. found here? Well, it's the facts that the I.J. found. All that you need to look at to determine whether it's a crime of moral turpitude is the fact of the conviction, what he was convicted under. And here you look at the statute. The I.J. found that he'd been convicted under the crime of moral turpitude statute, as did the board. You mean a crime of corrupting a minor? I'm sorry, a crime of corrupting a minor. Uh-huh. It's not necessarily to look behind the facts. That becomes important for the in-regime balancing, but not for the crime of moral turpitude analysis. And on the crime of moral turpitude analysis, don't we have to look at what conduct, the least culpable conduct that could offend the statute? That's correct, Your Honor. Okay, so if we do that, is it accurate to say, as your opponent does, that if you took an underage person to a rated R movie where you handed a 17-year-old a beer or you allowed a 17-year-old into your house when there was beer laying around and you left the house recklessly, that that would be morally turpitudinous? I'm not sure recklessly leaving the beer around would be prosecutable under the statute. There have been cases where people have been prosecuted for giving alcohol to underage minors. I haven't found a case the immigration judge refers to about taking a minor to a rated R movie. But I would argue that at least in the case of giving alcohol to underage drinkers, in this case it would not only be underage under 21, it would be under 18 to be prosecutable. That is a crime that would raise considerable concern that would qualify as a crime of moral turpitude. There's a reason we have drinking laws. Would you kindly pull the mic a little closer to you? Yes, Your Honor. Because we do review the tapes. Thank you. Can I ask you to talk about the factual piece of this, if you would, the assertion that the BIA just was acting outside the scope of its authority and went off fact-finding. What's your response to that? With regard to the 14-year-old finding? Right. Well, first of all, that is important in the in-regime analysis because that's a discretionary analysis as to whether he's entitled to a waiver. Answer the point, if you would. The IJ left the issue open. The BIA is the age. But the BIA made this conclusion on their belief that Zuba committed statutory rape, which meant that the victim had to be under 16. If the IJ left the fact-finding open, how could the BIA then come in and do fact-finding? Well, what the immigration judge did was balance the factors under in-regime or didn't balance them under in-regime but merely balanced... But if the IJ left the age, the fact... We don't know the person's age. There was some testimony and the IJ said, left open that issue, did not decide it. How can the BIA then decide it? Well, the immigration judge relied on the plea colloquy in some of its findings. The immigration judge... The plea colloquy that the victim was under 18 but not necessarily under 16. In the plea colloquy, he admitted that she was under 14. They read off the facts to him. They said, in light of those facts, do you still agree to plead guilty? He said, yes. In the plea colloquy? Yes, Your Honor. Uh... I thought the plea colloquy was that... You mean just the plea document, Your Honor? No, the colloquy that he... Right. You're talking about the plea colloquy in the state court, not the discussion before the IJ, right? Yes, that's correct, Your Honor. The immigration judge referred to that when she discussed what he had... But the immigration judge still decided that this was an open issue. Did not make it... Yeah, the immigration judge did decide it was an open issue. The immigration judge didn't... Did the immigration judge decide that this victim was under 16? No. In fact, didn't the immigration judge expressly say, I've got severe doubts about the asserted age of the victim? I mean, I thought there was a statement in there where the immigration judge was almost saying, I wonder about this victim's credibility and the age of the victim because there's no birth certificate, there's only the vaguest evidence. Well, Your Honor, that was actually... I assume that was part of the immigration judge's balancing. What the immigration judge was doing was looking at it, looking at the crime and saying, it's maybe not that serious, there wasn't any proof of the age, it's maybe understandable that he had made a mistake. Isn't that evidence, though, that shows that the immigration judge wasn't making the finding that this was a 14-year-old? Well, the immigration judge didn't affirmatively find one way or the other. When the board reviewed the immigration judge, it is entitled to de novo rebalance. But even in that context, if the immigration judge did not make a finding one way or the other, and as Judge Jordan said, was actually questioning whether there could be a finding that the person was under 16, but nonetheless did not make a finding, how can the BIA on appeal make a finding? Well, Your Honor, it's not that the BIA made an independent finding, the immigration judge... The BIA said that this was statutory rape, which therefore implies, has to imply, cannot do anything but imply that the person was under 16. Well, the statutory rape finding itself was not... I'm sorry, I shouldn't say it's a finding, it's not a finding, that was actually weighing the discretionary factors. The 14... If the person was 16, it could not be statutory rape, correct? That's right, Your Honor. The board's statement that she was 14 could be construed as a factual finding. But... If that's the case, isn't that an error? I don't think so, Your Honor. The immigration judge didn't make a finding one way or the other on the girl's age. Well, that's the whole point, isn't it, Mr. Stone? Because when we look here at the BIA's decision on page 3, the BIA says, the indictment and transcript of the guilty plea essentially indicate that the minimum crime to which the respondent admitted was statutory rape, i.e., he admitted consensual sexual relationship with a 14-year-old girl when he was over 18. That's the crime he admitted to, Your Honor. On the... When you say, that's the crime he admitted to, when the immigration judge reviewed the facts, the immigration judge made a statement calling into question expressly the victim's age and saying this was a... he pled guilty to corruption of a minor and left it open. So I guess what I'm wondering is how can the BIA go to the guilty plea? Or maybe it's better to ask it this way. Does the BIA have the authority to move through the IJ or past the IJ and go back to underlying evidence in the record and make its own decision about evidence in the record? In the state guilty plea. Well, Your Honor, the board is entitled to re-weigh the evidence. Let me just read briefly the board's story here. If you go back, if the BIA said that he committed statutory rape, but if you're saying you look at a categorical approach, obviously there was nothing in the state court by which there was a pleading to statutory rape. In fact, that the prosecutor dropped all of that because of the concerns about the credibility of the victim. All that was done at the state level was a plea to corrupting the minors, the morals of a minor. That's it. The plea colloquy at the state level doesn't help you necessarily because what actually happened on the categorical approach was that he pleaded to corrupting the morals of a minor. That's correct, Your Honor, under the categorical approach, but under the waiver analysis, the board doesn't apply a categorical approach. It looks at a fact-based approach. In the plea colloquy, he agreed that she was 14. The waiver analysis has to be whether it's violent or nonviolent before you get into the other factors of 1159, correct? They found that this was violent by virtue of being statutory rape. That's correct, Your Honor. That analysis itself is the board's exercise of its discretion to question on whether or not the board impermissibly found facts. That is a question of law, but in regime and its application is an application of the Attorney General's discretion. Are you still pressing the exhaustion argument? Yes, Your Honor. Give me your best argument on that. As I'm sure the court is now struggling with similar issues as me, the board did not rule on whether it was a crime of moral turpitude. The reason was because no one raised it to the board. It's true the alien didn't file a cross-appeal, but the alien didn't necessarily have to file a cross-appeal to even raise the issue. If Mr. Subba had merely filed an opposition to the government, which he didn't, but had to file an opposition and just simply said that he wasn't convicted of a crime of moral turpitude... Why does court have to do that? He got what he wanted. He got what he wanted. He got... yeah. Well, that is if he... not only to get the waiver, had he also wanted to not be found removable, then he didn't get what he wanted. There was an adverse decision against him. Well, he got... The bottom line was that he got what he wanted. That's correct, Your Honor. So, you're saying that in these circumstances somebody in his position should take an appeal on the chance that the BIA may reverse what the IJ did? Not necessarily, Your Honor. In these circumstances, he should at least file an opposition. And in that opposition, he could have raised in one sentence the issue. That's a very high burden you're putting on a petitioner. Yeah, I'm curious about this. So, you're saying that in order to exhaust administrative remedies, somebody does... somebody has to affirmatively respond to something their opponent does even though they've gotten all the relief they sought? Well, that's an easier route than filing a cross-appeal from an adverse decision. Do you have any authority for the position that administrative remedies are exhausted or have to be exhausted by taking positions against somebody else who's moving when you don't need to move or want to move because you've obtained all the relief you want? Is there authority for that? There are two decisions in this court. They're both unpublished. But one is Segal at 112 Fed Appendix 195. Another is Lau... Despolis. Despolis is the other one. Oh, okay. I also have Lau at 181 Fed Appendix 292. But there's nothing presidential? Nothing presidential. I mean, wouldn't we have to say that a motion to reopen is an administrative remedy as of right if we were to adopt your position? No. A motion to reopen isn't an administrative remedy as of right. But that would be the normal route for him to go. That could be. That's wrong. That cuts against your argument. I see my time is up. You're on air time. Is there anything else you want to tell us? No, your honor. Any other questions? No. Mr. Stone, thank you very much. Very quickly, I'd like to call the court's attention to two points in the record to show that the BIA didn't just find facts de novo here. It found erroneous facts. Look in the Joint Appendix to page 180. The criminal defendant's lawyer here says to the judge he accepted responsibility because she was under the age of 18 and because they have a child together but that's all he's accepted responsibility for. The judge says, all right. Which equates to corrupting the morals of the minor. Lawyer says, yes it does, your honor. Yes it does. The IJ regarding the age determination said that it was troubled by these proceedings in some respects because there was apparently no proof of the young woman's age. Before the trial? Before the state court? The first was before the state court. That's correct. Wasn't there some assent though that he gave? An admission. There was definitely no admission. The trial judge, the prosecutor said Wait a second. Is it just out of whole cloth that the government and the BIA are saying that there was an admission of the 14-year-old girl in front of the state court judge? I believe there is. What I just read here, that's all he's accepted responsibility for, is in front of the state court. What about the proffer? The prosecutor was going to make? He said, well, if we went with the trial and I didn't know exactly what happened here, here's what I would have tried to show. He said that we would have had a witness come up and say, oh yes, I was there when she was born and she is under the age of 14 years old. And then he pled guilty to corrupting the morals of a minor. The fact that there was that fact out there and that fact in dispute doesn't settle it for this court, especially in a formal categorical approach or a modified categorical approach. And it doesn't settle it for the IJ, especially when the IJ didn't accept that disputed fact as part of the clear and unequivocal record. I also want to address this crime of moral perpetuity issue as well. The DeVault decision establishes quite clearly that recklessness is the act here. You have to go to the facts of the DeVault decision to really see that. I can't even make up these facts, but the woman, the criminal defendant, was charged with corruption of a minor because she accidentally dropped her pants in front of three young boys. The Pennsylvania Superior Court said that for corruption of minors you have to have a knowing and intentional act, which tends to corrupt the morals of the minor. It was merely making the unremarkable statement that the act itself had to be knowing and intentional. It couldn't be an accident. But criminal liability isn't attached to the act of dropping one's pants in their own private house or the act of intercourse between two consensual adults. Criminal liability attaches to the state of mind regarding the consequences flowing from that act, acts which tend to corrupt the morals of a minor. Tend to corrupt the morals of a minor is clearly at the least recklessness here. And as this Court knows, this isn't the sort of crime that will satisfy moral turpitude under recklessness standards such as the Knapp decision. Let me ask you a question here. I'm reading from page 11 of the plea colloquy. This is page 178 in the Joint Appendix. The prosecutor has just gone through the facts and has asserted that her age is she was born in 1987 and it's her 16th birthday on that occasion. And then the Court says, Sir, you've heard a summary of the factual allegations here and circumstances surrounding negotiations regarding the plea agreement. Is that correct? Yes, Your Honor. Do you still wish to add anything you'd want to add? No, Your Honor. I take it that that is what the government's relying on. I take it that as well. In light of that, why isn't that an assent to the facts asserted by the prosecutor, including the fact of age? I think the very next page makes it clearer here where he says she was under the age of 18 and that's all he's accepted responsibility for. It would make a big difference here if this was a statutory rape charge that he was pleading guilty to, but the fact that she was 14 is extraneous to the factual basis of a corruption plea. Well, is it, you know, at that point I think you might be winking in your case. I hear you saying that he never admitted that she was 14. Not that she was 14 was extraneous, but that he never admitted it. Have I understood you right? Yeah, I think that's right. Then you take a look at page 201 of the appendix. And the question was now, how did you maybe it's 115 or 201. 201, I see that. It's a charging document. Toward the bottom of the page, how did you strike that, Your Honor? Now the incident occurs Now you had sexual intercourse with a 14-year-old girl, correct? Answer, about 14 years? Question mark, so it was sexual intercourse, I'm sure. Question, correct. Answer, yeah. I don't know, I'm sorry, was that before the IJ? No. I think it's I think that was a plea colloquy. I don't see, what page was that? It's page 115 in the Joy appendix or 201. 115 is before the IJ. The plea colloquy runs from 168 to 182. So that plea colloquy there was before the IJ. And obviously that has no bearing on the modified categorical approach of the crime of moral turpitude issue. Good. Any other questions? Thank you, Mr. Kutubi. We thank both counsel for a very helpful argument and we will take this case under advisement.